### GENERAL ELECTRIC CO. v. GILL et al.

#### (Circuit Court, E. D. Pennsylvania. January 16, 1904.)

#### No. 59.

1. CONTRACTS—EXECUTION—AGENT OF DISCLOSED PRINCIPAL.

   Where G. & Co. had contracted to furnish certain machinery to a corporation, the fact that plaintiff's proposal to furnish such machinery, addressed to G. & Co. at their office, contained as a part thereof the words, "For the National Umbrella Company, hereinafter called the purchaser," and recited that plaintiff proposed to furnish the following apparatus, delivered f. o. b. Philadelphia, "for the National Umbrella Company," did not relieve defendant, who subsequently signed G. & Co.'s acceptance of the proposal on plaintiff's refusal to approve the same unless guarantied by defendant, from liability, on the ground that the contract showed that the signers of the acceptance were acting only as agents for the umbrella company.

2. SAME—PERSONS LIABLE—SIGNATURE—EFFECT.

   G. & Co. requested plaintiff to give them a written proposal to furnish certain machinery, which was done by a proposal addressed to them at their office. The proposal was accepted on a printed form, the signature being "G. & Co., by S. S. G., President," with the word "President" erased. The acceptance was not satisfactory to plaintiff, and it refused to approve same unless defendant, who was the father of the members of the firm composing G. & Co., would guaranty it. This he did not do, but instead signed his name at the bottom of the acceptance with the individual names of the other partners. *Held,* that defendant was liable on the acceptance as a party to the contract.

Read & Pettit, for plaintiff.

David Lavis and George L. Crawford, for defendant Wm. B. Gill.

J. B. McPHERSON, District Judge. In May, 1902, Sidney S. Gill and T. Harvey Gill, electrical contractors, composed the firm of Gill & Co., their office being at 1000 Chestnut street, in the city of Philadelphia. In that month they entered into a contract to furnish certain motors and other electrical apparatus for the factory of the National Umbrella Company, situated at Thirtieth and Thompson streets, in the same city, and asked the General Electric Company, to make a proposal to furnish the machinery and apparatus that were needed. Accordingly, on May 29th, the electric company submitted a written proposal, signed "General Electric Company, by J. B. Porter, Philadelphia Office," and addressed as follows:

"To Messrs. Gill & Co. (For the National Umbrella Co.)
          "(Hereinafter called the Purchaser)
"Address, 1000 Chestnut Street, Philadelphia, Pa."

On June 4th the following acceptance was signed, immediately under the signature of Mr. Porter:

"To General Electric Company:
          "Your proposal as above is hereby accepted this fourth day of June, 1902.
                                        "Gill & Co.
                                        "By Sidney S. Gill,
                                               "President.

"Attest:
     "_____
               "Secretary."

The words "By" and "President" were printed (being evidently part of a form to be used when the acceptor was a corporation), and "President" was erased, apparently, as inspection of the paper will show, by Sidney, at the time when he appended his signature to the acceptance. In this condition the paper was brought to Mr. Porter by Sidney, and was laid before E. D. Mullen, the manager of the Philadelphia office, whose approval was necessary before the contract could take effect. Mr. Mullen was not satisfied with the financial responsibility of the firm of Gill & Co., and declined to approve the acceptance, unless William B. Gill, who was the father of Sidney and Harvey, should guaranty it. A separate agreement of guaranty was thereupon handed to Sidney to be executed by his father, but, so far as appears, this agreement was never signed. Instead the paper containing the acceptance of Gill & Co. was brought back to the company on June 17th or 18th by Harvey, but the acceptance was now signed by "W. B. Gill" and "T. Harvey Gill" also, their names being written in that order under the name of Sidney S. Gill; and the acceptance thus executed was then approved by Mr. Mullen. His approval, which is dated June 18th, made the contract complete. The machinery contracted for was delivered by the plaintiff to Gill & Co. f. o. b. at Philadelphia, and was set up in the building of the umbrella company. Default having been made in the payment of the contract price, this suit was brought against Sidney, T. Harvey, and W. B. Gill as individuals. Sidney and Harvey made no defense,

and judgment was entered against them by default. W. B. Gill elected to go to trial, and defended on the ground that the contract shows on its face that he merely signed as the hand of Gill & Co., and that, as Gill & Co. were acting, not for themselves, but as agents for the National Umbrella Company, and had disclosed their principal, he could not be held liable as an individual signer.

I do not dispute the proposition that, if a written contract, either in the body of the writing or in the signature at the end, shows distinctly that a signer is merely an agent acting for a disclosed principal, the signer is not personally bound. The Supreme Court of the United States, in Sun Printing Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, where a contract was signed, "Chester S. Lord, for The Sun Printing and Publishing Association," thus states the rules to be applied in this class of cases:

"The first question to be determined is, assuming for the present that Lord had authority to bind the Sun Association, was the first document the individual contract of Lord or that of the Sun Association?

"The rule of law to be applied in the determination of this question is thus stated in Whitney v. Wyman (1880) 101 U. S. 392, 395 [25 L. Ed. 1050]:

"'Where the question of agency in making a contract arises, there is a broad line of distinction between instruments under seal and stipulations in writing not under seal, or by parol. In the former case the contract must be in the name of the principal, must be under seal, and must purport to be his deed, and not the deed of the agent covenanting for him. Stanton v. Camp, 4 Barb. (N. Y.) 274.

"'In the latter cases the question is always one of intent; and the court, being untrammeled by any other consideration, is bound to give it effect. As the meaning of the lawmaker is the law, so the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose that it may be carried into execution. If the contract be unsealed, and the meaning clear, it matters not how it is phrased, nor how it is signed, whether by the agent for the principal, or with the name of the principal by the agent, or otherwise.

"'The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agrees to be so.'

"Now, while Lord is referred to in the body of the first writing as an individual, he signed the agreement 'For The Sun Printing and Publishing Association.' Clearly, this was a disclosure of the principal, and an apt manner of expressing an intention to bind such principal."

Other cases to the same effect are cited in the brief of the defendant's counsel: Continental Nat. Bank v. Heilman (C. C.) 81 Fed. 36; Gadd v. Houghton, 1 Exch. Div. 357; Hough v. Manzanos, 4 Exch. Div. 106; Ogden v. Hall, 40 L. T. 751; Pike v. Ongley, 18 Q. B. Div. 710; Whitford v. Laidler, 94 N. Y. 145, 46 Am. Rep. 131; Campbell v. Baker, 2 Watts, 84; Hopkins v. Mehaffy, 11 Serg. & R. 126. But, in my opinion, the rule has no application to the present case. As I construe the contract, Gill & Co. did not assume to act as agents for the umbrella company, but entered into the contract upon their own account. It may be conceded that the words, "For the National Umbrella Company," are capable of the construction contended for by the defendant, but in the position where they are found in the writing they are equally capable of the construction contended for by the plaintiff, namely, that they simply mean to state for whom the ma-

chinery was to be erected. The words being ambiguous, therefore, it is permissible to turn to undisputed facts that may throw light on the question of their true meaning. The same phrase is used later in the contract: "The company proposes to furnish the following apparatus, delivered f. o. b. Philadelphia, for the National Umbrella Company." Here, I think, the ambiguity is less apparent, and the plaintiff's contention seems more likely to be correct. Moreover, it is plainly the firm of Gill & Co. that is described as "the purchaser," and not the National Umbrella Company, for it is Gill & Co.'s office address that is given, and not the address of the umbrella company at all. And, finally, as Gill & Co. had a contract with the umbrella company to erect this machinery in the latter's factory—the fact that there was such a contract, but not its terms, was proved without objection at the trial—the natural inference is that they were seeking proposals on their own account, in order to enable them to fulfill their contract, and were not acting as agents for the very company with whom they had already established a different relation concerning the same subject-matter. The proposal is upon a standard printed form, and is evidently prepared with the expectation that it will be ordinarily signed by the ultimate owner and user of the machinery. For this reason it contains some provisions that are only applicable to such an owner, but there are a number of other provisions that apply to a contractor, such as Gill & Co., as completely as to the ultimate owner.

If this construction of the contract is correct, no other question need be considered; but if I am wrong, and if Gill & Co. are to be regarded as having made the contract on behalf of the umbrella company, W. B. Gill's responsibility must still be considered from another point of view. The partnership of Gill & Co. would then be relieved from liability, but it does not follow that the other signers are also relieved. There is no doubt, as it seems to me, that the word "By" after the partnership name applies to Sidney, and to him alone. He signed the firm name, and there is no evidence that the other two names were intended to be bracketed with his, as if the three had performed the impossible act of signing the firm name together, or as if they had been the joint agents or attorneys of Gill & Co. Harvey and the defendant did not sign for a week or two afterwards, and their names have no connection whatever with the partnership signature. The defendant was not a member of the firm, and there is no evidence that he had any authority to sign the firm name. But his name was certainly intended to have some significance, otherwise it would not have been put upon the paper; and in the light of the uncontradicted evidence—which does not in the least impair or alter the written instrument—I see no difficulty in determining what was meant. In my opinion, W. B. Gill signed the acceptance, instead of the separate guaranty that had been sent for his signature, because he intended to bind himself for the fulfillment of the contract in response to Mr. Mullen's demand, and it was simpler to have one paper than two. It made no real difference whether he became liable as an acceptor or as a surety, and (probably for that reason) he accepted the prop-

posal in precisely the same form as the other signers accepted it. Even if the proposal should be held to be addressed to Gill & Co. as the agents of the umbrella company, this did not prevent him from binding himself to see that such a contract should be properly carried out. The fact that he is not named in the body of the proposal is unimportant. He deliberately signed the acceptance, and thereby offered himself to the plaintiff as a party to the contract. There are numerous cases that hold a signer bound by the terms of an instrument, although he is not named therein. In Leith v. Bush, 61 Pa. 395, the bond declared, "that I, Wm. H. Bush," etc., "am held and firmly bound," and was signed by Bush and four others, all of whom were decided to be liable jointly and severally. Similar decisions are Knisely v. Shenberger, 7 Watts, 193; Dodge v. Chessman, 10 Pa. Super. Ct. 604; Smith v. Crooker, 5 Mass. 538; Parks v. Brinkerhoff, 2 Hill, 663; Clerk v. Blackstock, 1 Holt, 474, 3 E. C. L. 188; Hemenway v. Stone, 7 Mass. 58, 5 Am. Dec. 27; Dart v. Sherwood, 7 Wis. 523, 76 Am. Dec. 228; Clark v. Railroad Co., 36 N. Y. 135, 93 Am. Dec. 495; Thompson v. Coffman, 15 Or. 631, 16 Pac. 713; Staples v. Wheeler, 38 Me. 372.

The situation here makes a stronger case against the defendant than is to be found in the decisions just cited. If the contract had been complete when he signed the acceptance, the cases would be parallel. But it was not complete until Mr. Mullen had weighed and considered what was really the counter proposal contained in the acceptance, and had decided to close with the offer. The original proposal was made to Gill & Co., either as principals or agents, and for present purposes it makes no difference which they were. The acceptance offered the firm as a contracting party, but added a proposal that W. B. Gill should also be a party. This was a new term of the contract, which Mr. Mullen was not bound to accept; but when he did accept it W. B. Gill's obligation was fixed, and he is now bound to make it good. It is immaterial whether he became a principal or a surety. In either character he is equally bound to pay the sum that is still due.

Judgment may be entered for the plaintiff on the verdict.